IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MICHAEL DILDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16-cv-00996-HEH |
| | ) | |
| DIRECTV, LLC., and | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT BRIEF ADDRESSING PLAINTIFF'S STANDING**

Pursuant to the Court's Order of January 30, 2017 (ECF No. 13), Defendants DIRECTV, LLC ("DIRECTV") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (collectively "Defendants") by counsel, submit this Joint Brief Addressing Plaintiff's Standing.

## I.      INTRODUCTION

The Court has indicated that it has concerns about how the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) affects the issue of standing in this case. Order, ECF No. 13. As a result, the Court has ordered briefing on the issue of standing. *Id.* As requested by the Court, Defendants respectfully present their opening brief addressing Plaintiff's standing in light of *Spokeo*.

In *Spokeo*, the Supreme Court confirmed that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549. Since *Spokeo*'s issuance last May, numerous federal courts have wrestled with applying the requirement of "concreteness" to alleged statutory violations. Indeed, as of the date of this filing, well over 400 decisions have cited *Spokeo*, with over 60 cases doing so in the past month alone. A few weeks

ago, the Third and Seventh Circuits reached differing conclusions as to application of *Spokeo* to alleged statutory violations on the same day (January 20, 2017).  As Defendants prepared this brief, the Fourth Circuit issued its first published decision citing *Spokeo*, in which it affirmed two decisions finding data breach victims lacked Article III standing.  *Beck v. McDonald*, Nos. 15-1395 & 1715, 2017 WL 477781 (4th Cir. Feb. 6, 2017).

In this case, Defendants face a "bare bones" Complaint alleging, without factual elaboration: (a) the unauthorized accessing and "use" of Plaintiff's consumer report; and (b) unspecified "actual damages" as a result.  Compl. ECF No. 1.  Given early *Spokeo* rulings of this Court suggesting that an invasion of privacy may, in and of itself, give rise to concrete injury, Defendants answered Plaintiff's Complaint rather than moving to dismiss it.  In light of the rapidly-evolving law in this area (and the lack of specifics in Plaintiff's Complaint), DIRECTV's answer asserted an affirmative defense challenging Plaintiff's standing.  Answer ¶ 36, ECF No. 10.

Although the Fourth Circuit has only recently cited *Spokeo*, district courts within the Fourth Circuit (including this Court) have issued a number of decisions addressing its application to statutory violations causing no tangible injury.  Consistent with *Beck*, district courts within the Fourth Circuit have found that data breach victims lack an injury-in-fact, even where those victims alleged an invasion of privacy.  In contrast, decisions of this Court (including the decision in *Burke v. Federal National Mortgage Ass'n*, No. 3:16-cv-153-HEH, 2016 WL 4249496 (E.D. Va. Aug. 9, 2016), *vacated by reason of settlement*, 2016 WL 7451624 (E.D. Va. Dec. 6, 2016)) have found an invasion of privacy constituted a concrete injury for purposes of a FCRA claim.  Recent *Spokeo* rulings of other courts disagree with the reasoning (or even the holdings) of these decisions.

2

Accordingly, Defendants respectfully submit that the Court should consider whether Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.

## II.    FACTS AND BACKGROUND INFORMATION

### A.    Plaintiff's Complaint alleges that DIRECTV accessed Plaintiff's credit report from Equifax without a permissible purpose, used the report in an unspecified way, and caused Plaintiff undefined actual damages as a result.

On December 21, 2016, Plaintiff filed his Complaint, alleging that DIRECTV "obtained and used the Plaintiff's credit report without a permissible purpose to do so." Compl. ¶ 9, ECF No. 1. Plaintiff further alleges DIRECTV misrepresented to Equifax "the reason and purpose for its use of Plaintiff's credit report." *Id.* ¶ 10. Plaintiff does not elaborate why DIRECTV obtained his credit report, how DIRECTV used his credit report, or why Plaintiff believes DIRECTV lacked a permissible purpose to obtain his credit report. While Plaintiff states in conclusory fashion that he can "recover actual damages," he fails to provide any information explaining how he has suffered any actual injury as a result of DIRECTV's allegedly improper "use" of his credit report. *Id.* ¶ 26. Plaintiff does not allege that DIRECTV has released or allowed anyone to disseminate his credit information, that DIRECTV intends to disseminate his credit information, or that DIRECTV cannot be trusted to retain it safely. And Plaintiff has not alleged that DIRECTV's access to his credit information damaged his credit or otherwise caused him any financial harm whatsoever. Finally, Plaintiff does not allege any purported emotional injury (such as being embarrassed that DIRECTV saw his credit information). *See* Compl.

As for Equifax, Plaintiff alleges that it released his credit report to DIRECTV even though Equifax "did not have a lawful or reasonable basis to believe, let alone know, that DIRECTV had a permissible purpose to obtain and use Plaintiff's consumer report." *Id.* ¶ 12. Plaintiff further alleges that Equifax provided his consumer report to DIRECTV "without

3

reasonable procedures to obtain verification that DIRECTV had a permissible purpose to obtain the Plaintiff's consumer report." *Id.* ¶ 13.

Given the paucity of Plaintiff's allegations, the expeditious nature of disclosures and discovery in this Court, and their ability to move for summary judgment promptly after investigating the factual basis for Plaintiff's claims, Defendants answered Plaintiff's Complaint. As an affirmative defense, DIRECTV asserted that:

> Plaintiff lacks standing under Article III of the United States Constitution because he did not suffer an injury in fact, and therefore, the Court lacks subject matter jurisdiction over this action. To establish standing, Plaintiff must show a concrete and particularized invasion of a legally protected interest and that he is in the zone of interests the FCRA is intended to protect. To the extent Plaintiff has not suffered any concrete and particularized harm, and is not in the zone of interests protected by the FCRA as the result of the conduct alleged, Plaintiff lacks standing.

Answer ¶ 36, ECF No. 10.

Noting its "concerns about how the United States Supreme Court's decision in *Spokeo* affects the issue of standing in this case," the Court directed the parties to submit briefing on the issue of Plaintiff's standing. Order, ECF No. 13.

**B.** **The *Spokeo* decision held that a bare statutory violation does not authorize Article III standing and required a "risk of real harm" to show a concrete injury in fact.**

In *Spokeo*, the Supreme Court rejected as "incomplete" the Ninth Circuit's standing analysis in a case arising under the FCRA. 136 S. Ct. at 1545. To have Article III standing, a plaintiff must "allege an injury that is both 'concrete *and* particularized.'" *Id.* (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Because the Court of Appeals had failed to analyze the separate "concreteness" requirement, the *Spokeo* court remanded the case. *Id.*

The *Spokeo* plaintiff alleged that his own consumer report, which he pulled, contained inaccurate information, in violation of the FCRA. *Id.* at 1546. The Supreme Court addressed

whether this alleged statutory violation satisfied the "injury in fact" requirement for standing. *Id.* at 1547-48. Because the Constitution mandates an injury in fact, "'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1992)). Even a plaintiff alleging a statutory violation must show concrete harm. *Id.* at 1548.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted). Even some intangible injuries can be concrete, and Congress's decision to grant a right to sue for an intangible injury is "instructive and important" in conducting the Article III analysis. *Id.* at 1549. But "Article III standing requires a concrete injury even in the context of a statutory violation," and thus "a bare procedural violation, divorced from any concrete harm," would not constitute injury in fact providing standing. *Id.*

In some circumstances, the "risk of real harm" can "satisfy the requirements of concreteness." 136 S. Ct. at 1549 (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)). The common law of defamation, for example, long has allowed parties to sue for reputational harm that may be "difficult to prove or measure." *Id.* And the Supreme Court previously had recognized standing for claims seeking the Congressionally-mandated disclosure of certain information. *Id.* at 1549-50 (citations omitted).

To decide whether an alleged statutory violation satisfies Article III standing, a court must consider the "degree of risk" of real harm inherent in the alleged violation while honoring the rule that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." 136 S. Ct. at 1550. "A violation of one of the FCRA's procedural requirements may result in no harm." *Id.*

**C.    Shortly after _Spokeo_, a Fourth Circuit district court rejected standing in a data breach case, despite a claimed invasion of the victim's privacy.**

In a decision issued mere days after _Spokeo_, a Fourth Circuit district court addressed whether a data breach victim adequately had alleged an injury in fact.  _Khan v. Children's Nat'l Health Sys._, 188 F. Supp. 3d 524 (D. Md. 2016).  Consistent with _Spokeo_'s directive to focus on the "risk of real harm," the _Khan_ court devoted most of its analysis to the issue of whether the victim had alleged an "increased risk of identity theft."  188 F. Supp. 3d at 529-33.  Because the plaintiff did not allege "actual misuse of the personal data or facts indicating a clear intent to engage in such misuse," the district court ruled that the plaintiff had not established a "'certainly impending' injury or 'substantial risk' of imminent injury sufficient to establish Article III standing."  _Id._ at 533 (quoting _Clapper_, 133 S. Ct. at 1147, 1150 n.3).

The _Khan_ court summarily rejected the plaintiff's additional grounds for standing.  188 F. Supp. 3d at 533-34.  Regarding the plaintiff's claim that the "data breach has caused a loss of privacy that constitutes an injury in fact," the district court ruled that "she has not identified any potential damages arising from such a loss and thus fails to allege a 'concrete and particularized injury.'"  _Id._ at 533 (quoting _In re Zappos.com, Inc._, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015)).

The District of Maryland reached the same conclusion in two other data breach cases. _See Chambliss v. Carefirst, Inc._, No. RDB-15-2288, 2016 WL 3055299, at *4 (D. Md. May 27, 2016) (holding that "'the mere loss of data – without any evidence that it has been either viewed or misused – does not constitute an injury sufficient to confer standing'") (citation omitted); _McCoy v. Fisher_, No. PX-16-324, 2016 WL 6082417 (D. Md. Oct. 18, 2016) (following _Khan_ and _Chambliss_ in dismissing data breach claims for lack of Article III standing).  As discussed below, the Fourth Circuit reached the same conclusion last week in _Beck_.

**D.**      **An early decision of this Court finds standing for an alleged violation of the FCRA's stand-alone disclosure rule, but the majority of subsequent decisions have reached the opposite conclusion.**

About a month after the Supreme Court issued *Spokeo*, Judge Payne addressed Article III standing based on an alleged violation of the FCRA's "stand-alone disclosure" requirement. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016). Under the FCRA, an employer planning to pull the consumer report of a prospective employee must provide a "clear and conspicuous disclosure . . . in a document that consists solely of the disclosure." *Id.* at 631 (quoting 15 U.S.C. § 1681b(b)(2)(A)). In *Thomas*, the named plaintiff sought to represent an "impermissible use" class challenging the adequacy of the employer's disclosure (and, derivatively, the legitimacy of the employer's subsequent accessing of the prospective employees' consumer reports). *See id.* at 633-34.

The plaintiff alleged both informational harm – under the theory that he had not received a proper disclosure from the employer – and an invasion of privacy – under the theory that, in the absence of a proper disclosure, the employer accessed his consumer report improperly. *Id.* at 634. Citing the authorities discussed in *Spokeo* as recognizing an "informational" injury for a failure to make Congressionally-mandated disclosures, the *Thomas* court found that the employee had "alleged a concrete informational injury." *Id.*

Because the employer allegedly had not provided a compliant disclosure, the *Thomas* court also found a violation of the "statutorily created right to privacy" under the FCRA. *Id.* at 635-36. The district court stated: "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Id.* at 636 (citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)). The

*Thomas* court then cited various non-FCRA cases holding that allegations of non-compliance with statutory provisions implicating the right to privacy demonstrate "concrete injury, regardless of actual damages." *Id.*

The District of New Jersey recently disagreed with both prongs of *Thomas*'s reasoning and held that FCRA stand-alone disclosure claims did not satisfy *Spokeo*'s requirements. *In re Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.*, MDL No. 2615, 2017 WL 354023 (D.N.J. Jan. 24, 2017). In rejecting a claim of informational harm, the *Michaels* court disagreed with *Thomas* that a non-compliant disclosure alone constituted an actionable violation (while acknowledging that specific allegations that the non-compliance caused the prospective employee not to understand the disclosure might be sufficient to show standing). 2017 WL 354023, at *7.

The *Michaels* court likewise rejected standing based on an "invasion of privacy." 2017 WL 354023, at *11. While acknowledging that in some contexts a violation of a privacy right might support standing, the nature of the violation at issue here – an employer's accessing of a prospective employee's consumer report based on an allegedly improper disclosure – did not involve the threatened widespread dissemination of private information. *Id.* at *10. In the absence of allegations that the prospective employee failed to understand the disclosure, the alleged invasion of privacy reflected a "bare procedural violation" insufficient to confer standing under *Spokeo*. *Id.*

As the *Michaels* court noted, the majority of district courts addressing the stand-alone disclosure issue had reached a conclusion contrary to *Thomas*. *See id.* at *5 n.8, *11 n.19 (discussing cases rejecting invasion of privacy claims arising from stand-alone disclosure violations). In contrast, the *Michaels* court cited only two district courts following *Thomas* in the

stand-alone disclosure context. *Id.* at \*5 n.8. Thus, *Thomas* largely has been rejected in its specific factual context of FCRA stand-alone disclosure claims.

E. **This Court's decision in *Burke* followed *Thomas* in holding a bank's unauthorized access of its former customer's consumer report satisfies *Spokeo*, but its ruling conflicts with another district court's decision involving similar facts.**

In August of last year, this Court denied a motion to dismiss FCRA claims by a former bank customer alleging that the bank defendant (Fannie Mae) improperly accessed her consumer report under the false pretense of an "account review." *Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16-cv-153-HEH, 2016 WL 4249496 (E.D. Va. Aug. 9, 2016), *vacated by reason of settlement*, 2016 WL 7451624 (E.D. Va. Dec. 6, 2016). The customer alleged that she formerly had a mortgage insured by Fannie Mae, had discharged that mortgage in bankruptcy, but that Fannie Mae nevertheless thereafter had pulled her report for an "account review." 2016 WL 4249496, at \*2. The customer alleged "no harm or damages beyond the wrongful obtaining of her credit report," but argued that she asserted a "substantive" rather than "procedural" right. *Id.*

After observing that "[t]his is admittedly a close question," this Court discussed *Thomas*'s ruling that the FCRA "established a right to privacy in one's consumer report" and that this privacy right was "substantive in nature, not merely technical or procedural." 2016 WL 4249496, at \*2. This Court in *Burke* quoted *Thomas* in noting that "'the common law has long recognized a right to personal privacy.'" *Id.* (quoting 2016 WL 3653878, at \*10). And this Court in *Burke* favorably quoted *Thomas*'s statement that "'unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of privacy that constitutes a concrete injury sufficient to confer standing.'" *Id.* (quoting 2016 WL 3653878, at \*10).

9

This Court in *Burke* also discussed the non-FCRA case of *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016).  The plaintiff in *Nickelodeon* alleged that, contrary to explicit representations that it did not collect any personal information regarding the browsing activities of children who visited its website, Nickelodeon in fact collected and sold that information for targeted marketing purposes.  *Id.* at 268-70.  In the short section of its opinion addressing Article III standing, the Third Circuit concluded: "the harm is concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information." *Id.* at 274.  The Third Circuit also noted a pre-*Spokeo* ruling that "Congress has long provided plaintiffs with a right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Id.* (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 & n.19 (3d Cir. 2015)).

This Court in *Burke* followed these decisions in holding that the former bank customer had alleged a concrete injury.  "While it is true that Burke does not allege an obviously tangible harm, such as the loss of money, the denial of employment, or the denial of credit, that does not necessarily mean that her alleged injury is only a bare, technical violation." 2016 WL 4249496, at *3.  Thus, "given the purposes, framework, and structure of the FCRA, the right to privacy established by the statute appears to be more substantive that procedural." *Id.* at *4 (footnote omitted).  "This being so, Plaintiff's alleged violation of privacy is a concrete harm, even if that harm does not lead to other, more tangible harms." *Id.*

Following additional proceedings, the parties settled and submitted an order "that the Court lacks subject-matter jurisdiction."  2016 WL 7451624, at *1.  This Court in *Burke* accordingly dismissed the case for lack of jurisdiction and ruled "it was without jurisdiction to issue any prior opinion or order in this case." *Id.*

**F.    A different district court has reached a result contrary to *Burke* in a case similarly involving a bank's accessing a credit report of its former customer.**

In the meantime, a different federal court reached the opposite result in applying *Spokeo* to a virtually identical factual context. *See Detter v. KeyBank, N.A.*, No. 16-00498-CV-W-ODS, 2016 WL 6699283 (W.D. Mo. Nov. 14, 2016), *vacated and remanded*, 2016 WL 7242556 (W.D. Mo. Dec. 13, 2016), *appeal filed*, No. 16-4562 (8th Cir. Dec. 29, 2016).   The former bank customer in *Detter*, like the former bank customer in *Burke*, alleged that the bank improperly had accessed her consumer report after the termination of the parties' relationship.   2016 WL 6699283, at *1.

The *Detter* court discussed *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930-31 (8th Cir. 2016), where the Eighth Circuit found a lack of standing despite a cable company's alleged failure to destroy its former customer's personal information. *Id.* at *2.  The *Detter* court emphasized the absence of allegations in *Braitberg* that the cable company wrongfully in possession of the information had "disclosed the information to a third party, allowed a third party to access the information, or . . . used the information in any way." *Id.*  It further emphasized that the *Braitberg* plaintiff did not allege a "'material risk of harm from the retention.'"   *Id.* (quoting 836 F.3d at 930).   Accordingly, the complaint alleged a non-actionable "'bare procedural violation, divorced from any concrete harm.'"   *Id.* (quoting 836 F.3d at 930-31) (citing *Spokeo*, 136 S. Ct. at 1549)).

The *Detter* court reasoned that the FCRA violation before it – a bank's allegedly unauthorized accessing of a former customer's credit report – likewise constituted a bare procedural violation without "actual harm."   2016 WL 6699283, at *3.   The customer did not allege that the bank disclosed the report to third parties or used the information in any way, nor did he allege any "material risk of harm" as a result of the bank's obtaining of the report.   *Id.*

The *Detter* court went on to reject the customer's claimed demarcation between "procedural" and "substantive" rights, finding *Spokeo* superseded the customer's cited authority.  *Id.* Accordingly, the district court dismissed the customer's claim for lack of standing.[1]  *Id.*

**G.      The Seventh Circuit's *Gubala* decision rejects the demarcation between substantive and procedural violations in holding the unlawful possession of private information, without more, does not support Article III standing.**

Consistent with *Detter* and *Braitberg*, the Seventh Circuit very recently discounted the claimed "distinction between substantive and procedural statutory violations" under *Spokeo*.  *See Gubala v. Time Warner Cable, Inc.*, No. 16-2613, 2017 WL 243343, at *3 (7th Cir. Jan. 20, 2017).  The Seventh Circuit explained that "a failure to comply with a statutory requirement to destroy information is substantive, yet need not (in this case, so far as appears, did not) cause a concrete injury" and noted that the plaintiff's counsel had "conceded the irrelevance of his attempted distinction between substantive and procedural statutory violations" at oral argument. *Id.* at *2.

In *Gubala*, the plaintiff filed class claims challenging a cable company's failure, under the Cable Communications Policy Act, to "'destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected.'"  2017 WL 243343, at *1 (quoting 47 U.S.C. § 551(e)).  According to the plaintiff, Time Warner had retained his personal information, including his social security number and his credit card information, for eight years after it no longer had a right to access it.  *Id.*  The Seventh Circuit

---

[1] The district court later vacated its dismissal of the plaintiff's claims and remanded the removed case back to state court, deciding that its lack of subject matter results in remand rather than dismissal since the case was originally filed in state court (a decision the bank has appealed)). *Id.*, *vacated and remanded*, 2016 WL 7242556; *see also May v. Consumer Adjustment Co.*, No. 4:14-CV-166 HEA, 2017 WL 227964 (E.D. Mo. Jan. 19, 2017) (following *Detter*).

upheld the dismissal of the case because the plaintiff failed to establish an injury-in-fact sufficient to confer Article III standing. *Id.* at \*2.

Judge Posner explained that while the plaintiff may "be able to prove a violation of section 551, he ha[d] not alleged any plausible (even if attenuated) risk of harm to himself from such a violation – any risk substantial enough to be deemed 'concrete.'" *Id.* at \*2 (citing *Spokeo*, 136 S. Ct. at 1549). In so holding, the court rejected the plaintiff's contention that he did not have to show any actual harm or risk of harm because the violation constituted a substantive, rather than procedural, statutory right. *Id.* at \*3. The *Gubala* court also examined whether the plaintiff had suffered any perceptible harm or risk of harm from the invasion of privacy, despite plaintiff's claim of inherent concrete harm. *Id.* Finding the cable company's mere improper possession of the information insufficient, the Seventh Circuit emphasized the absence of allegations that the customer's private information had been disseminated, would be disseminated in the future, or remained subject to a heightened risk of theft. *Id.*

Thus, the *Gubala* court held that, even assuming the defendant had violated the plaintiff's substantive right to have his personal information destroyed, the plaintiff had failed to establish a concrete harm. *Id.* at \*2-3. While Time Warner had violated a "substantive" statutory right, mere continued unlawful access to the personal information did not cause harm or material risk of harm. *Id.*

**H.    This Court has issued two additional decisions – *Witt* and *Green* – that followed *Thomas* and *Burke* in finding Article III standing based on FCRA violations.**

In *Witt v. Corelogic Saferent, LLC*, No. 3:15-CV-386, 2016 WL 4424955, at \*2 (E.D. Va. Aug. 18, 2016), the plaintiffs brought class claims alleging that credit reporting agencies disseminated their credit reports without a permissible purpose. Specifically, the plaintiffs alleged that the defendants unlawfully sold their credit reports to third parties under the guise of

providing background checks for prospective employment.  *Id.*  Critically, the Defendants in *Witt* explicitly had taken the position that the reports at issue were "not for 'employment purposes,' and that, because Defendants are 'data wholesalers,' they do not need to show any 'permissible purpose' to further information to other CRAs."  *Id.* at *13.

In rejecting the defendants' contention that the plaintiffs lacked Article III standing, the court found that the plaintiffs had suffered an injury-in-fact because the unlawful sale of their credit information by the defendants invaded their privacy.  *Id.* at *12.  The court found that "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue."  *Id.* (emphasis added).

Magistrate Judge Krask followed *Thomas*, *Burke*, and *Witt* in *Green v. RentGrow, Inc.*, No. 2:16CV421, 2016 WL 7018564 (E.D. Va. Nov. 10, 2016), *report and recommendation adopted*, No. 2:16CV421, 2016 WL 7031287 (E.D. Va. Nov. 30, 2016).  In *Green*, the plaintiff learned that RentGrow had obtained his credit report in relation to a rental application for an apartment complex located in Wisconsin.  *Id.*  Because the plaintiff did not live in Wisconsin and had not applied to rent an apartment, he "immediately became extremely concerned" that identity thieves had accessed his personal information.  2016 WL 7018564, at *1.  The plaintiff also claimed that RentGrow's accessing his credit report resulted in a "diminished credit score."  *Id.*

RentGrow challenged plaintiff's standing, arguing the plaintiff "allege[d] a 'bare procedural violation' of the FCRA without demonstrating that the procedural violation caused Green a concrete injury."  2016 WL 7018564, at *4.  Following *Thomas*, *Burke*, and *Witt*, the court found that "[a]s a result of the alleged violation, the plaintiff suffered an injury in fact – an invasion of the consumer's right to privacy – sufficient to confer standing."  *Id.*  Quoting

14

*Thomas*, the court reasoned that the FCRA "'establishes a right to privacy in one's consumer report' and that the protections provided 'are clearly substantive, and neither technical nor procedural.'" *Id.* (quoting *Thomas*, 2016 WL 3653878, at \*7). The court concluded that "the invasion of privacy stemming from [the] violation of section 1681b(f)" – which the plaintiff in *Green* alleged resulted in a diminished credit score and increased fear of identity theft – "amount[ed] to 'more than a bare procedural violation' of the FCRA." *Id.* at \*6 (*Burke*, 2016 WL 4249496, at \*4).

I. **Last week, the Fourth Circuit issued *Beck*, holding that data breach victims lacked Article III standing because the allegedly increased risk of future identity theft was not an imminent risk of injury-in-fact.**

On February 6, 2017, the Fourth Circuit addressed whether certain data breach victims had standing to assert claims against the entity that failed to keep their personal information confidential. *Beck v. McDonald*, No. 15-1395, 2017 WL 477781 (4th Cir. Feb. 6, 2017). In upholding the district court's dismissal of the plaintiffs' claims for lack of subject matter jurisdiction, the Court of Appeals held that neither (a) the alleged increased risk of future identity theft nor (b) the cost of measures to protect against future identity sufficed to establish a non-speculative, imminent injury-in-fact supporting Article III standing. *Id.* at \*1.

In *Beck*, the Dorn Veterans Affairs Medical Center ("Dorn VAMC") lost a laptop containing confidential patient information as well as boxes of medical records. 2017 WL 477781, at \*1. Two classes of patients sued, alleging these breaches caused them "embarrassment, inconvenience, unfairness, mental distress, and the threat of current and future substantial harm from identity theft and other misuse of their Personal Information." *Id.* at \*1 (internal quotations omitted). The patients also alleged that the "threat of identity theft required

them to frequently monitor their credit reports, bank statements, health insurance reports, and other similar information, purchas[e] credit watch services, and [shift] financial accounts." *Id.*

In the absence of any existing proof of identity theft, the Fourth Circuit focused on whether an allegedly threatened injury satisfies the injury-in-fact requirement. 2017 WL 477781, at \*7-\*9. Under the Supreme Court's decision in *Clapper*, "'the threatened injury must be *certainly impending* to constitute injury in fact.'" *Id.* at \*6 (quoting *Clapper*, 133 S. Ct. at 1147-48) (emphasis added). The Fourth Circuit held that the plaintiffs had not shown a "certainly impending" injury, given that years had passed since the loss of the laptop and boxes of records without any instances of identity theft traceable to the data breach. *Id.* at \*9.

The *Beck* court then explained that "[e]ven if we credit the Plaintiffs' allegation that 33% of those affected by Dorn VAMC data breaches will become victims of identity theft, it follows that over 66% of veterans affected will suffer no harm . . . [and that] statistic falls far short of establishing a 'substantial risk' of harm." *Id.* (quoting *Khan*, 188 F. Supp. 3d at 533). After rejecting the alleged increased risk of identity theft as insufficient to show injury-in-fact, the court summarily rejected the costs of measures to guard against identity theft as "merely 'a repackaged version of [Plaintiffs'] first failed theory of standing.'" *Id.* at \*10 (quoting *Clapper*, 133 S. Ct. at 1151).

The *Beck* court did not address *Spokeo* because "the [p]laintiffs d[id] not allege that Dorn VAMC's violations of the Privacy Act alone constitute[d] an Article III injury-in-fact." 2017 WL 477781, at \*5 n.4. But the Fourth Circuit noted the split in authority on this exact issue: "In *Spokeo's* aftermath, some plaintiffs have attempted to establish Article III standing by alleging that the violation of a privacy statute, *in and of itself*, is sufficiently "concrete" to establish an 'injury-in-fact,' to varying result." *Id.* (emphasis in original) (citations omitted). To

illustrate this divergence, *Beck* compared the decision of the Third Circuit in *In re Horizon Healthcare Services. Inc. Data Breach Litigation*, No. 15-2309, 2017 WL 242554 (3d Cir. Jan. 20, 2017) (finding privacy-based standing for claims of data breach victims) with the same-day decision of the Seventh Circuit in *Gubala* (rejecting privacy-based standing based on the improper continued retention of former customer information). *Id*. Thus, the Fourth Circuit appears poised to weigh in on the privacy standing issue that has generated conflicting ruling across the court system.[2]

## III.   ARGUMENT AND LEGAL AUTHORITY

### A.   Plaintiff has not established any concrete harm resulting from Defendants' alleged FCRA violations.

To establish an actionable injury, Plaintiff must show that he suffered a concrete harm as a result of Defendants' FCRA violations.  But Plaintiff alleges no specific injury whatsoever from DIRECTV's allegedly improper access to and "use" of his consumer report.  In the absence of any explanation of actual injury, Plaintiff appears similarly situated to the plaintiff in *Gubala*, who failed to allege "any plausible (even if attenuated) risk of harm" despite the fact the defendant company unlawfully had been in possession of the plaintiff's confidential information for nearly a decade.  *See Gubala v. Time Warner Cable, Inc.*, No. 16-2613, 2017 WL 243343, at *2 (7th Cir. Jan. 20, 2017).  Numerous other rulings likewise reject standing predicated on the mere improper possession of a consumer's credit information.  *See, e.g., Shoots, et al. v. iQor Holdings U.S. Inc.*, 2016 WL 6090723, at *5 (D. Minn. Oct. 18, 2016) (rejecting privacy-based standing for FCRA claim by prospective employee against employer based solely on illegally

---

[2] The conflict may be illusory.  Although *Horizon* described the right to privacy broadly, the majority opinion noted facts indicating that the data breach at issue had resulted in at least one actual identity theft.  *See* 2017 WL 242554, at *10 n.19.  In dissent, Judge Shwartz challenged the connection of the identity theft to the data breach.  *Id.* at *14 n.6.  An identity theft actually linked to a specific data breach may show a "certainly impending" injury under *Clapper*.

obtaining employee's credit report); *Groshek v. TimeWarner Cable, Inc.,* 2016 WL 4203506, at *3 (E.D. Wis. Aug. 9, 2016) (same).

As with *Gubala*, here there is no "indication that [DIRECTV] has released, or allowed anyone to disseminate, any of the plaintiff's [credit] information in [DIRECTV]'s possession[;] . . . [and Plaintiff has not presented any] reason to believe [DIRECTV] intends to release any of his information or c[ould] not be trusted to retain it." 2017 WL 243343, at *2. Similarly, as with *Groshek*, Plaintiff has not alleged that DIRECTV's access to his credit information caused damage to his credit, risk of further disclosure, or embarrassment. 2016 WL 4203506, at *3.

Unlike in *Witt*, Plaintiff does not contend that DIRECTV sold or otherwise disseminated his credit information. *See* 2016 WL 4424955, at *2. And unlike in *Green*, Plaintiff does not allege that his credit score has been diminished as a result of DIRECTV's conduct. *See* 2016 WL 7018564, at *1. Nor does Plaintiff allege that he fears identity theft because DIRECTV obtained his credit information. Other than a conclusory allegation that "Plaintiff is entitled to recover actual damages," there is no indication in the Complaint whatsoever that Plaintiff has been harmed or placed in material risk of harm by Defendants. *See* Compl. ¶ 26.

In *Burke*, this Court acknowledged that the issue of whether a FCRA violation, without more, constitutes a concrete harm is "a close question." 2016 WL 4249496, at *3. Given the numerous intervening rulings rejecting standing for FCRA claims where, as here, the plaintiff does not allege any actual harm or even a material risk of future harm – including the Seventh Circuit's decision in *Gubala* and the Fourth Circuit's decision in *Beck* –Defendants respectfully request the Court revisit its reasoning in *Burke*.

At an absolute minimum, Plaintiff should provide additional details regarding (a) his conclusory allegations DIRECTV used his credit report for an impermissible purpose (rather

than for a proper purpose such as a firm offer of credit, *see, e.g.*, *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509 (D. Md. 2009)); and (b) his alleged "actual damages," *see* Compl. ¶ 26.

**B.      The Court should examine whether Plaintiff's claims should be dismissed.**

As the Court properly recognized in requesting briefing from the parties, "[a] federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

Defendants recognize that, in August of last year, this Court ruled that wrongfully accessing a credit report caused a concrete injury by invading the consumer's privacy. Since that time, however, hundreds of additional *Spokeo* decisions have issued, including several decisions by the Courts of Appeals. Given the ubiquitous nature of federal statutory claims in this Court and throughout the Fourth Circuit, the critical threshold question of Article III standing deserves to be reexamined carefully. Defendants respectfully submit that the reasoning of the Seventh Circuit in *Gubala*, as well as numerous other courts refusing to allow standing to be predicated upon an invasion of privacy unaccompanied by resulting harm, compels a different result.

19

Respectfully submitted, February 13, 2017.


_____/s/_____        _____/s/_____
Charles K. Seyfarth (VSB No. 44530)        John W. Montgomery, Jr.
D. Sutton Hirschler III (VSB No. 85596)        John W. Montgomery, Jr., Attorney, PLC
LeClairRyan        2116 Dabney Road, Suite 1-A
919 East Main Street, 24th Floor        Richmond, Virginia 23230
Richmond, Virginia 23219        Telephone:  (804) 355-8724
Telephone:  (804) 916-7159        Facsimile:   (804) 355-8748
Facsimile:   (804) 916-7259        jmontgomery@jwm-law.com
charles.seyfarth@leclairryan.com
sutton.hirschler@leclairryan.com        *Counsel for Equifax Information Services, LLC*

John P. Jett (Georgia Bar No. 827033)
*pro hac vice* application forthcoming
Kathryn Isted (Georgia Bar No. 908030)
*pro hac vice* application forthcoming
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555
jjett@kilpatricktownsend.com
kisted@kilpatricktownsend.com


*Counsel for DIRECTV, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

> Leonard Anthony Bennett
> Craig C. Marchiando
> Elizabeth Hanes
> Consumer Litigation Associates, P.C.
> 763 J. Clyde Morris Blvd., 1-A
> Newport News, VA 23601
>
> *Counsel for Plaintiff*
>
> John W. Montgomery, Jr.
> John W. Montgomery, Jr., Attorney, PLC
> 2116 Dabney Road, Suite A-1
> Richmond, VA 23230
>
> *Counsel for Equifax Information Services, LLC*

> _____/s/_____
> D. Sutton Hirschler III (VSB No. 85596)
> LeClairRyan
> 919 East Main Street, Twenty-Fourth Floor
> Richmond, Virginia 23219
> Telephone:  (804) 783-1116
> Facsimile:   (804) 916-7180
> sutton.hirschler@leclairryan.com